Gary Hunter v. Gary Hunter Yes, Your Honor. So I'll address that directly. I think as a matter of reading precedent, as a matter of reading Maples, and a matter of first principles, it makes sense that Holland is the controlling case over Maples. Holland goes to great lengths to distinguish procedural default cases. Maples is a procedural default case. Whatever Maples may have said about Holland, the Supreme Court has made absolutely clear that unless it explicitly overrules itself in something that isn't dicta, then this Court is to follow the controlling case, which is in this case Holland. We still prevail even if Holland is not good law for two reasons. One is that as the Seventh Circuit recognized in Socha, the case that we referenced in our supplemental letter, when a counsel is ending representation, the agency principles that illuminate, they did not address Maples, but it indicates that the agency relationship is severed, and so that you cannot attribute those actions of a previous counsel to his previous client. So this is a case where with the post-writ circumstances, Holland still controls, and even if Maples controls, its reasoning is inapplicable here because there's no agency relationship following the end of the state representation. And then the other reason that even if Maples controls, we still deserve reversal, is that Mr. Jimenez has raised at the very least a colorable claim of abandonment in that last period. The record indicates he made numerous requests to have his file sent to him. That hasn't been controverted by the government, and there's been no other evidence on it. That's at Record Site 396 in Excerpt 10. And so at the very minimum, the district court should have been holding a hearing to determine whether there was an effect of abandonment in that last period. And again, even if this court doesn't consider the post-writ circumstances, this court can avoid the Holland-Maples issue altogether by just finding that the earlier concededly extraordinary circumstances caused the default. Even if those events were just typical routine events that happen in every case, that only strengthens the claim that there's causation here because that means that the amount of time that a petitioner is going to need after a state writ is filed is going to be fairly substantial. There's going to be, at least it appears on this record, about a month buffered in for a petitioner to be able to properly file his federal habeas petition. So for all those reasons, even if the Holland-Maples issue doesn't come out in our favor, which we believe it does, this needs to go back to the district court for additional issues. With that, if there are no further questions, I'll reserve my time. All right. Thank you, counsel. You may proceed. Thank you. Good morning. May it please the Court. Eric White for the Appellees. I'd like to begin by addressing a couple of things that came up in questioning. First, the issue of the district court's factual finding on Jimenez's access to his state writ. The district court did not find that Jimenez had the state writ in his possession at any particular time. The district court said, and this is available at tab 3 of the appendix, that Jimenez should have had access to his state writ. And so that actually dovetails into our larger point about this, about the important lack of causation here. We say in our brief that attorney deception, attorney misstatements can constitute this Court has found can constitute extraordinary circumstances. But importantly, the second part of that is that the Petitioner has the burden to show that those extraordinary circumstances stood in his way and prevented a timely filing. This Court has addressed this many times. Most recently last year in United States v. Wheaton, where the Court said that extraordinary circumstances that happened at the beginning of the period don't necessarily mean that that causes the actual missed filing deadline. In Fisher v. Johnson, this Court dealt with a situation where there was still six months left before the filing deadline, before the Federal habeas petition had to be filed. And importantly there, the Court made clear that this causation issue is not just a matter of but-for causation. The Court explicitly says that the extraordinary circumstances pointed to there, I believe it was 17 days of being hospitalized in a mental hospital, would have been outcome determinative. That is to say that the petition, when it was filed, was apparently filed less than 17 days after the deadline. But the Court said that's not the issue when addressing the causation element of extraordinary circumstances. It really is whether it sort of incorporates the diligence aspect of the inquiry within the extraordinary circumstances by asking whether a reasonably diligent Petitioner, despite the extraordinary circumstances, still could have met the deadline. And this is true in cases from other circuits, too. And there are lots of different sort of timelines mentioned. In Brown v. Shannon, which is discussed in the briefs, the Third Circuit said that the fact that there was nearly one month left before the deadline, that was enough time to, I guess, break sort of the causal chain. And in that case, you actually had the situation where the Petitioner still had to file his State habeas petition. So the Court there said you could do all of that within a month. And the Court recognized, you know, maybe it's not the most comprehensive petition ever filed that you could do that, but they said that the Petitioner could still file a basic pro se habeas petition by that deadline. And I think one important thing I would like the Court to keep in mind here, and I have a couple of record sites, the Federal habeas petition that Jimenez filed in this case is available in the record from pages 7 to 20. If this Court takes a look at that petition, it's not a --" it's the Federal Prisoner Form. It looks like Jimenez typed on it. I don't know. There's nothing really in the briefing about his access to typewriters and computers. This is more than we usually get, though. I mean, he has those addendum pages. It does have addendum pages, yes, yes. But it's not — I mean, I just wanted to, you know, make sure that — It's not a brief. Yes, yes. And I think one thing, there's talk in the briefing about Jimenez's access to case law from the library. There are no cases cited in the Federal habeas petition that Jimenez filed. There are no record sites included in there. I guess I should qualify the cases cited. One of the claims that he wanted to bring is a Brady claim, so it does reference Brady in the title of it, but there's no discussion of case law. That came a month later when Jimenez filed his memorandum of law in support of the habeas petition, which that isn't subject to the deadline, and that wouldn't be a reason to equitably toll the deadline here. But one thing that's important to do as well is to — and I have another record site for you here. At page 6,728 of the record through page 6743, you can see the State writ that Jimenez filed. And if you compare that document to the Federal habeas petition that Jimenez filed, you will find that they are virtually identical. I didn't do sort of a red-line analysis, so there might be a word here and there in the substantive allegations that might be different. But basically, line by line, the three substantive claims that Jimenez wants to bring in Federal court, the discussion of them, every detail that's included in them is the same as what was in the State court. But doesn't that further his point that that's why he needed the State habeas? He no longer had a lawyer. The lawyer did the State habeas. He wants to see the claims that he should be raising in Federal habeas. He wanted to get the State habeas petition, which he's saying he didn't get until, what, three days before deadline? Yes. He does say that. One point on that, and I think this came up in questioning earlier, is that the record does indicate that Jimenez previously had access to these types of documents. He mentions in his March 3, 2014 letter to Ellison that he wanted — when he's referencing the stuff that he wanted, he said, you know, he had begun drafting a State brief for the State habeas petition, and he said he wanted that draft back, which indicates that he was shuttling documents back and forth between himself and Ellison. It's not clear why he didn't make copies of this, whether he can make copies. All we know is the fact that he's filing all these other letters means he has some — some means of keeping documents. Also, in — How does the means of keeping document equal access to a document? You started out saying there's some evidence that he had access to documents, and you ended up with his ability or capacity to keep documents. Tell me how that's — Well, I mean that he — the citation of the record that I had, where he asked for a document back, we're saying the reasonable inference is that implies he had that document at some point, because he was asking for it back. So it implies that at one point he is working on materials for his State writ, sends them to his State habeas counsel, and now later on, now that the State — his State writ was denied, he's asking for some documents back. That would only suggest that he was asking for something back that he had worked on. Yes. That's right. Yes. What I'm — what I'm saying is it's — That's different than asking for something that the lawyer may have filed, isn't it? Well, it would — it gets at the same issues as the State writ. All right. Well, it's not clear — it is not clear from the record that Jimenez had the particular writ itself. One thing I think that we would point out — Then we should send it back for a hearing on that. It's — it's — we don't think that it's outcome determinative here because the burden is on the Petitioner to establish extraordinary circumstances. One thing that came up in the questioning earlier that we'd like to talk just a bit more about is the fact that — Well, your argument seems to be despite the extraordinary circumstances, he had enough time left. Yes. That's right. Yes. Now you're saying the burden is on him to establish extraordinary circumstances. You're not — so you're saying there weren't any extraordinary circumstances. What we conceded in our brief is that attorney deception can constitute an extraordinary circumstance. All right. There is this broader issue. It's often abbreviated extraordinary circumstance, but it really is extraordinary circumstances that stood in the way and prevented timely filing. So we never conceded the causation issue or — All right. But — Is there anything in the record that indicates that he had communicated with the State court while the writ was pending? There is nothing — I believe the record indicates that there was some type of evidentiary hearing held in the State court while the writ was pending. I mean, did he ask the clerk of the State court to send him the writ, for example? No. I don't — I don't believe there's anything in the record that indicates that. And certainly I get nothing that he has pointed to in the briefing or in anything else that suggests that he did this. And I think that is an important issue that, you know, we're talking about two weeks here, 30 days here, and that — one thing, the State writ was pending for 960 days. And there is something notably absent in the Petitioner's brief that in the timeline that he includes, which was incredibly helpful, in the appendix, that there's just this moment where just over two and a half years just kind of drops off the face of the earth. And it's not the case, although there is a tolling provision in AEDPA, and, you know, that is not time that is counted against his time to file a Federal habeas petition. The Supreme Court in Holland looked to the actions in — in doing its case-specific inquiry to determine whether there were extraordinary circumstances that — that warranted equitable tolling. The Court looked to actions that Holland took during the three years that his State writ was pending. It pointed to the — a succession of letters that he sent to his counsel urging him to make sure to preserve issues for his Federal habeas petition. There are also other — other cases that have talked about the fact that — that it's not the case that work has to stop on the Federal habeas petition while — while something is pending in State court, particularly for that long of an amount of time. These — these practical concerns about having divided attention and things like that, that the opposing counsel raised, might be — seem more applicable to a scenario where — where a — where it might be pending for, you know, a few months or something like that. But it seems very unlikely that in a period of over two and a half years, there was not time to take steps knowing that there are only a few months remaining on the — on the ability to file a timely Federal habeas petition. What — Isn't there the possibility that you could get the relief you're seeking in your State proceeding? I'm sorry. Isn't there a possibility that you could actually get the relief you're seeking in your State proceeding? There is a — there is a possibility. I think — So you should anticipate the loss and go ahead and — and file something. It's not a matter of — I don't think that you should anticipate the loss in the sense that you should necessarily — when you have several months remaining in your — on your EDPA clock, that you should necessarily file, for instance, a protective habeas petition during that time. But it doesn't mean that you can't be doing work like, I don't know, asking for and receiving copies of your State writ so that you can be in a position where you can essentially copy and paste your State claims, which is what I mean, I guess there is some overlap, especially on the causation of extraordinary circumstances and diligence, but the courts have treated those as — as separate inquiries, and here there was no diligence finding because the court found no extraordinary circumstances. Yes. The — some of the factors would seem to apply to both. I mean, it seems like from — from this — from the Court's discussion in Wheaton and in Fisher and if you look in particular at the Second Circuit's discussion of the causation element in Harper v. Ecole, it almost looks like what the causation element is doing is it's kind of an objective diligence analysis versus the more subjective diligence analysis that is sort of the separate diligence product. That's — that's — I don't think any court has explicitly labeled it as such. That's how I've understood the difference, that it really is — you go to the causation analysis when you have an extraordinary circumstance, whatever that is, and then you have to do — again, it is kind of like a — sort of like a diligence analysis within the extraordinary circumstances because it's — it's not enough, for instance, you might have a scenario where for the first week you could have attorney deception or you could have a letter from the court clerk indicating a different time and then it's corrected very quickly, then you still have to analyze, well, could a — a petitioner have used the remaining 11 months, 11 and a half months, something like that, or the I want to briefly address, although I don't — I don't think there's a need to belabor it that much, there's a lot of talk in the briefing about how Holland requires this sort of — this analysis that would — would sort of mash everything together to determine what's an extraordinary circumstance. I think it is sometimes unclear in the briefing whether Jimenez is arguing that the attorney — the attorney misstatements and deception is the extraordinary circumstance and then that is — that is somehow modified by or expanded by the actions of his State Habeas Council, or whether all of this together is a — an extraordinary circumstance. He says essentially that the Court has to take into account everything, even if they are otherwise garden-variety negligence issues. A couple things on that. Holland doesn't — doesn't really say that courts have to do that. Holland essentially reverses the Eleventh Circuit because it says it applied an overly rigid test because it had a couple categories it was trying to cramp everything into and said that, you know, if something is — it was a question of kind of gross negligence versus negligence. And the — the Holland court did look at all of the factors related to what the — the attorney misconduct there, which made a bit more sense because you have to keep in mind there are lots of things that can constitute extraordinary circumstances, only one of which is attorney — sort of egregious attorney error. In Holland, there was — Holland was represented by one lawyer during this time, and so essentially what they did was they looked at lots of things that in and of themselves may not have been — may not have risen to the level of an extraordinary and so they could — they could do that. Here, it would really be quite extraordinary to, under the rubric of egregious attorney conduct, elevate the two-week or nine-day lags in response time from Mr. Jimenez's State Habeas Counsel to the level of egregious attorney misconduct solely because they're being considered part and parcel with or in combination with actions taken by Jimenez's separate State appellate counsel. But shouldn't counsel be aware of the impending deadline? In other words, maybe waiting 10 days to send the files, not unreasonable if you've got 10 months to file, but when you're up against a really tight deadline, you better get that file to your client quick. I mean, it's not — I guess I don't see it so much as an issue that you look at all the extraordinary circumstances together, but you judge the appropriateness of the conduct given the — the constraints that were being faced. Yes. I think that the difference, though, is that — I mean, well, for one thing, this Court has held many times — there are myriad instances where attorneys should know the deadline is coming up, don't know the deadline is coming up for whatever reason and miss the deadline, and it's, you know, it's an unfortunate thing when it happens, but it's not an extraordinary circumstance. And whether that's for agency reasons because the attorney is charged with making those types of decisions on behalf of the Petitioner or for whatever else they are, I mean, this Court has really made that — that's — in an area of law where there is some lack of clarity, that is one of the few things that is quite clear from all the previous cases, that simply ignorance of the law or mistakes of law, whether it's by the Petitioner's counsel or the Petitioner proceeding pro se, do not rise to the level of an extraordinary circumstance constituting equitable tolling. And we don't know whether the State counsel knew the deadlines or just dilly-dallied, do we? Whether — I'm sorry. Whether the State — We don't know whether he didn't know when the deadline was or whether he, for whatever reason, dilly-dallied. We don't know. There are references in the record. It seems like Jimenez knew there was a deadline, that he had a, you know, a limited amount of time to file in Federal court, but it appears he did not know when the deadline was. I mean, he — No, I'm talking about his counsel, though. Oh, his counsel — He said it wasn't extraordinary circumstances for counsel not to know the deadline. Yes. We don't know if that's what happened. It is not clear. One — one thing to note is that, in the briefing and in the record, Mr. Ellison was hired to be Jimenez's State writ habeas counsel. And so there's nothing in the record that indicates any kind of conversation back and forth about this Federal habeas petition deadline between Jimenez and Ellison. I think at one point Jimenez asked Ellison, when he's requesting the State documents back, he says he wants them back because he knows he has 30 days to file an appeal in Federal court, which is wrong. And so there's no explicit reference to this deadline. And so it's not clear who knows what's going on. But again, I mean, this Court has held multiple times that, you know, it's — I think that it would not be in line with case law to say that it is not an extraordinary circumstance warning equitable tolling if you have the wrong deadline in your head and then you miss it versus not being aware of the deadline or just not thinking about it at all and missing it. I mean, both of those fall under the same general category of, you know, it is — it is negligent not to know the deadline and to ignore it, but — but not extraordinary. And so if there are no further questions. Thank you, counsel. Rebuttal. I'd like to make four points on rebuttal. First, the government has indicated that there was a lack of case sites in the application that Mr. Jimenez submitted to the — as part of his federal petition. I think any judge, any lawyer knows that the amount of legal research and work you do on something is like an iceberg, where what you deliver to the court, the very tip of it is what's seen, and there's a whole breadth underneath that is — that's done in the background that you don't see. And so I think that it's — it's fair to assume that Mr. Jimenez was using that. There's also indications in the record he was doing legal research. It indicates at 396 of the record that he was shepherdizing materials to actually file his petition. So there's actual evidence that he's doing research in preparation for this. I also wanted to respond to counsel's indication of Fisher, the case that sets out the causation standard for — connects reasonable diligence with the causation standard. The — Fisher, the extraordinary circumstances in that case were a total of 17 days in the middle of the period, not, as here, more than 70 percent of the total — total time for the limitations period. So there's a very significant quantitative difference going on between the two cases. Counsel also indicated that in Holland, the court referenced what was going on during the state — actions that the prisoner petitioner took during the pendency of his state writ. That is irrelevant to whether or not it needs to be considered because an individual doing something during a state writ may show that they are being extraordinarily diligent, but that doesn't mean that it requires everyone else to be diligent in that fashion. Just because some prisoner did do something in a particular case doesn't mean it's required of all other prisoner petitioners. I think the last thing that I — last two things I'd like to do. One, the diligence and the causation overlap. To be frank, this is a mess in terms of how cases deal with this across the circuits within this circuit. I think that the Second and the Ninth Circuit have probably spoken about it most clearly, which is the reasonable diligence prong addresses what a petitioner was doing during the existence of the extraordinary circumstances, and the causation prong, or the diligence through filing causation, as the Ninth Circuit calls it, deals with what happens when the extraordinary circumstances have ceased. So that — if this Court wants to provide analytical clarity to that, I think that that makes good sense as how to set it out. But again, that's by no means clear across existing precedent. And the last thing, in terms of Mr. Jimenez's diligence, this Court has found that two and a half months drafting a federal habeas petition was reasonably diligent. They found that in Brown v. Johnson, which was cited in our supplemental letter. And then other courts, the Fifth Circuit has also found that spending about one month drafting a federal habeas petition was reasonably diligent, and that's about how much time Mr. Jimenez spent drafting his federal petition in this case. So there's ample precedent to draw on to find that he was being reasonably diligent during that last period of time. If there are no further questions, I respectfully request that this Court reverse the district court's conclusion — or district court's opinion. Thank you. Thank you. We'll take the matter under revising.